IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| ANGELO MARCELLUS IRVING, JR.<br><br>                                    Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>                                    Respondent. | Criminal Action Number 3:01CR304-1<br>Civil Action Number 3:04CV859 |

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on Petitioner Angelo Marcellus Irving, Jr.'s Motion pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct his Sentence. After a thorough review of Petitioner's arguments and the Government's response, the Court finds that the Motion is without merit and will be dismissed. The Court dispenses with an evidentiary hearing in this matter because the files and record conclusively shows that Petitioner is not entitled to relief. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

I. Background

A Grand Jury sitting in Richmond, Virginia charged petitioner Angelo Irving ("petitioner") and eleven other individuals with violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), specifically 18 U.S.C. § 1962(c),[1] and conspiracy to distribute cocaine

---

[1]Section 1962(c) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debts."

base in violation of 21 U.S.C. § 846. The Superseding Indictment alleged that petitioner along with the other defendants operated as a criminal organization known as the "Fulton Hill Hustlers" for the purpose of distributing cocaine base. Accordingly, the Fulton Hill Hustlers constituted an enterprise as defined by 18 U.S.C. § 1961(4).[2] The members of the enterprise, including petitioner, engaged in acts involving murder, attempted murder and robbery all in furtherance of the drug conspiracy.

The Superseding Indictment charged the individual members of the Fulton Hill Hustlers with specific racketeering acts in support of their criminal enterprise. The indictment alleged that on or about September 5, 1995, in the Eastern District of Virginia, petitioner intentionally attempted to murder Vincent Allen in violation of Virginia Code § 18.2-32 and § 18.2-26 (referred to as "Racketeering Act Four"). The Indictment alleged that on or about June 21, 1997, petitioner murdered Walter Broaddus in violation of Va. Code § 18.2-32 ("Racketeering Act Thirteen"); and that on or about July 13, 1997, petitioner attempted to murder Jeannie Cosby, Gloria Cosby, Yolanda Cosby, Doris Cosby, Sequoia Cosby and Nakia Spragley ("Racketeering Act Fourteen"). Finally, Count Two of the Superseding Indictment charged petitioner, along with the other members of the organization, with conspiracy to distribute and possess with the intent to distribute fifty (50) grams or more of a mixture and substance containing a detectable amount of cocaine base, commonly known as "crack" cocaine ("Racketeering Act Seventeen").

The case against petitioner proceeded to trial on May 1, 2002. After six days of trial, the jury returned a special verdict against petitioner finding him guilty of Racketeering Acts Four, Thirteen

---

[2]An enterprise is a "group of persons associated together for a common purpose of engaging in a course of conduct," which may be proved "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583 (1981).

and Seventeen. The jury found petitioner guilty of the attempted murder of Vincent Allen and the murder of Walter Broaddus and conspiracy to distribute cocaine base. On September 5, 2002, petitioner appeared before this Court and was sentenced to life imprisonment on each count in the Superseding Indictment, to run concurrently. On that same day, petitioner promptly noted his appeal.

On appeal, petitioner challenged the sufficiency of the evidence to convict him of the RICO offense as a member of the Fulton Hill Hustlers. Petitioner asserted that the government failed to prove "that an enterprise existed, that he knowingly participated in the enterprise, and that he committed the predicate acts of murder, attempted murder, and conspiracy to distribute crack cocaine." United States v. Irving, Case No. 02-4744 (4th Cir., June 25, 2003). The Court of Appeals reviewed the record and found "substantial evidence" to support the conclusion that a racketeering enterprise existed with the common purpose of distributing crack cocaine. The evidence revealed that members of the Fulton Hill Hustlers committed or attempted to commit murder to intimidate rivals, punish traitors and collect drug debts.

The Court of Appeals found evidence in the record that petitioner attempted to murder Vincent Allen in an effort to recover drug money and that petitioner killed Walter Broaddus, a member of a rival drug organization, in order to enhance his standing within his own gang. Based on these findings, the Fourth Circuit affirmed petitioner's judgment and sentence. The Supreme Court denied petitioner a writ of certiorari on October 20, 2003. This Court received petitioner's Motion pursuant to § 2255 on October 25, 2004, dated October 19, 2004, one day within the required deadline. This matter has been fully briefed and is now ripe for consideration.

II. Arguments Presented

Petitioner's thirty-one page brief raises several ineffective assistance of counsel arguments ranging from defense counsel's alleged failure to object to an unconstitutional amendment of his indictment during trial as well as his attorney's failure to raise various objections on direct appeal. For the reasons stated herein, the Court finds that petitioner's motion is without merit and shall be dismissed.

A petitioner collaterally attacking his sentence pursuant to § 2255 must prove by a preponderance of the evidence that the Court imposed his sentence in violation of the United States Constitution. See 28 U.S.C. § 2255; Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam).

a. Ineffective Assistance Claims Generally

To establish a violation of the Sixth Amendment through ineffective assistance of counsel, a petitioner must show that "(i) his attorney's performance was, under all circumstances, unreasonable under prevailing professional norms, and (ii) there is a reasonable possibility that, but for counsel's errors, a different result would have obtained." Smith v. United States, 871 F. Supp. 251, 255 (E.D. Va. 1994) (finding that petitioner was prejudiced by his counsel's failure to object to being assigned an improper criminal history point which raised his Criminal History Category from II to III); see also Strickland v. Washington, 466 U.S. 668, 687 (1984). The petitioner must show that he was prejudiced by his counsel's error – that had his attorney objected or not committed the alleged error, the outcome of the proceeding would have been different. Indeed, petitioner must raise "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Importantly, while Strickland imposes a two-part test for evaluating ineffective assistance of counsel

4

claims, the court need only find that petitioner failed to satisfy one of the two requirements. See id. at 690.

### i. Claims One and Two: Ineffective Assistance – Failure to Object to Improper Amendment of the Indictment

Petitioner contends that defense counsel rendered ineffective assistance by failing to object to the sufficiency of the indictment and later at trial for failing to object to an unconstitutional amendment of the indictment. Petitioner contends that the indictment never charged him with using a firearm during the commission of Walter Broaddus' murder and therefore, the government could not introduce evidence that petitioner killed Broaddus with a firearm. Petitioner claims that his attorney should have objected when the government attempted to amend his indictment by introducing the use of the firearm into evidence during the trial. Petitioner asserts that his counsel's failure "resulted in him being convicted of a crime not returned by the Grand Jury." Petitioner's Brief at 5.

Petitioner's argument is entirely without merit and the cases cited in his brief do not remotely support his claim. For example, in United States v. Floresca, 38 F.3d 706 (4th Cir. 1994), the trial court committed error by instructing the jury that it could convict the defendant for a different crime than the one for which he was indicted; conduct which constituted a constructive amendment. An amendment of an indictment has occurred when the defendant is convicted of charges not included in the indictment. See United States v. Fletcher, 74 F.3d 49, 53 (4th Cir. 1996). The Grand Jury charged petitioner with the murder of Walter Broaddus; the jury found petitioner guilty of Broaddus' murder. No constructive amendment occurred. Any contention that defense counsel rendered ineffective assistance for failing to object to the use of the firearm as evidence is groundless because

no such error occurred. With regard to the Strickland test, petitioner cannot show unreasonable performance or prejudice and so petitioner's claims in this regard fails as a matter of law. The jury did not convict petitioner of an offense for which he was not charged in the indictment.

This is not a case where counsel failed to raise a significant or obvious issue on appeal for no apparent reason. See Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000). Counsel is not obligated to assert all nonfrivolous issues on appeal and certainly he is not expected to assert groundless claims. "[W]innowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Id. at 164 (internal quotations and citation omitted). Appellate counsel's role is to highlight for the appellate court those claims that are most deserving of its attention and not distract the Court with useless arguments.

### ii. Claim Three: Ineffective Assistance – Failure to Raise a Claim of Insufficiency of the Evidence on Direct Appeal

Petitioner claims that his attorney failed to raise proper challenges to the government's evidence on direct appeal. Petitioner contends that trial counsel challenged the sufficiency of the evidence under the wrong statutory provision. According to petitioner, defense counsel argued that the evidence did not support a conviction under 18 U.S.C. § 1962(c) and (d) when the indictment only charged petitioner with a violation of subsection (c). Petitioner asserts that counsel's failure to challenge the sufficiency of the evidence to support a conviction under § 1962(c) fell outside of a wide range of reasonable professional norms. Moreover, petitioner argues that the government failed to prove the existence of an enterprise.

On appeal, defense counsel challenged the existence of an enterprise and whether petitioner participated in the affairs of the enterprise through a pattern of racketeering activity. The Fourth Circuit considered petitioner's arguments on direct appeal and found sufficient evidence to support the conviction and sentence. Petitioner has not demonstrated ineffective assistance of appellate counsel and so this claim will be denied. Additionally, petitioner will not be allowed to re-litigate the issues previously decided on direct appeal. See Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (defendant "will not be allowed to recast, under the guise of collateral attack, questions fully considered by this court" on direct appeal).

### iii. Claim Four: Ineffective Assistance – Failure to Raise on Direct Appeal the Trial Court's Denial of Petitioner's Motion to Exclude Testimony

On the third day of the jury trial, petitioner's counsel moved the Court to exclude the testimony of the government's witness, Daco Edwards, as well as several other anticipated witnesses. Counsel objected to Mr. Edwards' testimony, arguing that information provided to the defense pursuant to Jencks v. United States, 353 U.S. 657 (1957), indicated that Mr. Edwards failed a polygraph examination relating to information in his anticipated testimony. Petitioner's attorney requested that the Court exclude Mr. Edwards from testifying or allow the defense to cross-examine him on the basis of the failed polygraph examination.

Additionally, petitioner's counsel moved for a continuance due to the government's apparent failure to provide accurate criminal records on three government witnesses: Quincy Burrell, Daco Edwards and Mr. Hines.[3] As to Mr. Burrell, defense counsel argued that the government provided

---

[3]The objection as to Mr. Hines is not clear. Counsel told the Court that the government provided a copy of his Pre-Sentence Report that showed several cocaine convictions. But counsel's objection did not specify the nature of the objection to Mr. Hines.

him with a criminal history showing no prior convictions, however, cross-examination revealed that Mr. Burrell had several convictions on his record. The initial disclosure as to Mr. Edwards indicated that he did not have a criminal record, but on the morning of Mr. Edwards' scheduled testimony, defense counsel learned that Mr. Edwards had at least eight prior convictions. Defense counsel expressed concern that all of the criminal history information was incorrect and asked the Court to require that the government produce the criminal histories or exclude the witnesses from testifying.

This Court denied counsel's motion. Petitioner claims that his attorney "should have raised the district courts [sic] abuse of discretion for failure to exclude the testimony of the government witness [sic] for failure to disclose their prior criminal convictions." Petitioner did not make any argument with regard to Mr. Edwards' polygraph examination nor did defense counsel adequately describe the material in his objection.

Once again, to succeed on his ineffective assistance of counsel claim, a defendant must demonstrate that his counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance was prejudicial. See Strickland, 466 U.S. at 687-88. Stated differently, petitioner must show that counsel's performance was unreasonable compared to prevailing professional norms and that but for counsel's error, a different result would have obtained.

Assuming for the moment that counsel's failure to raise the Court's abuse of discretion in denying the motion to exclude was unreasonable, petitioner has not, and indeed cannot, demonstrate a prejudicial result or undermine confidence in the outcome of the proceeding.[4] As to the results of a polygraph examination, the Fourth Circuit consistently disapproves of polygraph evidence; indeed,

---

[4] The Court will begin with the prejudice prong because if petitioner cannot demonstrate the requisite prejudice, the Court need not even consider the performance prong. See Strickland, 466 U.S. at 697.

8

the rule of this circuit is that polygraph evidence is never admissible to impeach the credibility of a witness. See United States v. Sanchez, 118 F.3d 192, 197 (4th Cir. 1997). Nor has petitioner demonstrated that defense counsel's cross-examination of these witnesses suffered to the point of being so ineffective that the Fourth Circuit would have reversed petitioner's conviction if presented with the issue on direct appeal.

For example, defense counsel's questions to Mr. Edwards on cross-examination covered three pages of trial transcript in which he and Mr. Edwards laid out each of his prior convictions for the jury. Mr. Edwards testified that he had been convicted of six prior felonies but defense counsel demonstrated to Mr. Edwards and the jury that, in fact, he had been convicted on eight prior instances. Trial Transcript p. 407-410. On Mr. Burrell's cross-examination, defense counsel elicited testimony that Mr. Burrell had been previously convicted of possession with the intent to distribute cocaine base.

On appeal, the trial court's evidentiary rulings are entitled to substantial deference, see United States v. Russell, 971 F.2d 1098, 1104 (4th Cir. 1992), and will not be reversed absent an abuse of discretion, see United States v. Lancaster, 96 F.3d 734, 744 (4th Cir. 1996) (en banc). Petitioner cannot demonstrate that counsel's ineffective assistance in this regard conveys a sense that the adversary proceeding was somehow unfair or unreliable. Petitioner states that the United States willfully failed to disclose the witnesses' prior convictions in order to gain a tactical advantage and minimize the effect of cross-examination. However, nothing in the record indicates that petitioner's defense suffered as a result of the delinquent disclosures. Moreover, defense counsel cannot be faulted for deciding not to present what are perceived to weaker arguments on appeal. Rather than attempting to overwhelm the appellate court with every possible instance of error, defense counsel

9

made a tactical decision to present his best argument on appeal – and the theory of the case that he pursued consistently throughout trial – that the evidence was insufficient to show that petitioner acted as part of an organization for purposes of the RICO statute.

Tactical decisions by counsel at trial and on direct appeal are accorded a presumption that counsel chose the most promising avenue of success. The Court will not presume that defense counsel set his client up to fail. The burden is on petitioner to establish his claims by a preponderance of the evidence and the record simply does not demonstrate that petitioner was prejudiced as a result of counsel's failure to raise this denied motion on appeal. Counsel does not operate under an obligation to assert all non-frivolous issues on appeal. Indeed, appellate counsel is charged with reviewing the record and selecting the most promising issues for review. See Jones v. Barnes, 463 U.S. 745, 752 (1983). In order to overcome the presumption of effective assistance, petitioner must demonstrate that the ignored issues were clearly stronger than those presented. See Jarvis, 236 F.3d at 164. Petitioner has failed to carry this burden.

### iv. Claim Five: Ineffective Assistance – Defense Counsel Opened the Door to Adverse Testimony

Petitioner claims that defense counsel opened the door to damaging testimony through his ineffective cross-examination. Government witness Jamar Brown testified on direct examination that petitioner stopped selling drugs to Brown because Brown "came up short with [petitioner's] money, and he cut me off and stopped dealing with me." Trial Transcript p. 1043. On cross-examination, defense counsel attempted to use this incident to demonstrate the witness's penchant for dishonesty. On redirect, the U.S. Attorney inquired into a confrontation between petitioner and Jamar Brown over drug money. The U.S. Attorney asked Brown about the "run-in over money you

owed [petitioner]." Trial Transcript p. 1061. Before Brown answered, defense counsel objected to the question as being beyond the scope of cross-examination, stating that he did not ask Brown about specific instances.

The United States argued that "he clearly opened the door with the run-in he had." Trial Transcript p. 1062. At the end of Jamar Brown's testimony, petitioner's counsel moved for a mistrial based on the prejudicial effect of Brown's testimony as to the "run-in." Brown testified that petitioner held a gun to Lamar Pittman's head over a $500 drug debt. Counsel claimed that his questioning did not open the door for the line of re-direct from the government. This Court denied the motion. Trial Trans. p. 1064. The government then called Lamar Pittman and asked him to describe the "run-in" with petitioner.

Petitioner claims simply that "trial counsel was ineffective for opening the door to this prejudicial testimony." The Court is highly deferential to counsel's trial performance and must make "every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. The Court is mindful to "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." Id. Moreover, the petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id.

Defense counsel clearly questioned the witness with the intent of showing that the witness stole money from petitioner and that he would do anything to help himself when in trouble. When the U.S. Attorney inquired further into the end of the witness' relationship with petitioner, counsel raised an objection and attempted to prevent any further testimony on the subject. Although not

11

successful, the Court cannot say that counsel's line of questioning fell below an objective standard of reasonableness. Nor can petitioner claim prejudice based on counsel's alleged error because the next witness, Lamar Pittman, testified to the event on direct examination.

### v. Claim Six: Blakely v. Washington – Impermissible Enhancements

Petitioner argues that he received an impermissible sentence enhancement for possession of a firearm and for the finding in the Pre-Sentence Report that he conspired to distribute 1.5 kilograms of cocaine base. See PSR Worksheet A.[5] Petitioner challenges these enhancements based on the Supreme Court's holdings in Apprendi v. New Jersey, 530 U.S. 466 (2000), and Blakely v. Washington, 542 U.S. __ (2004). Given the recent decision in United States v. Booker, 543 U.S. __ (2005), the Court will consider the impact of that holding on petitioner's motion.

Petitioner incorrectly asserts that the Blakely decision, and more appropriately the Booker decision, applies retroactively to cases pending on collateral review. Petitioner correctly characterizes the essential holding in Blakely; and the first half of the Booker opinion, authored by Justice Stevens, echoed that holding and declared judicial fact finding under Federal Sentencing Guidelines unconstitutional so long as the Guidelines mandated sentences within a given range. See Booker, slip op. at 19. However, the second half of the Opinion, authored by Justice Breyer, removed the mandatory requirement which now leaves sentencing judges free to impose virtually any sentence so long as the court first considers the range recommended by the Guidelines, the

---

[5]The jury convicted petitioner of conspiracy to distribute 50 grams or more of cocaine base without finding a specific drug weight. The Pre-Sentence Report held petitioner accountable for 1.5 kilograms. At 1.5 kilograms, petitioner's base offense level is 36; at 50 grams, the base level 32. Assuming a criminal history category III, the guideline ranges are 235 to 293 versus 151 to 188. Petitioner also received a 2 point enhancement in his offense level because he possessed a dangerous weapon.

factors required by 18 U.S.C. § 3553 and as long as the court does not impose a sentence beyond the maximum prescribed by the charging statute, e.g. 18 U.S.C. § 1962(c) and § 1963.

Booker left the Federal Sentencing Guidelines in play but declared them advisory. See Booker, No. 04-104, slip op. at 2 (finding "the provision of the federal sentencing statute that makes the Guidelines mandatory . . . incompatible with today's constitutional holding."). Although it is too early to conclude exactly what impact the decision will have on federal sentencings, what is clear is that the decision does not apply retroactively to cases pending on collateral review. See Tyler v. Cain, 533 U.S. 656, 663 (2001) ("[A] new rule is not made retroactive to cases on collateral review unless the Supreme Court holds it to be retroactive"). The only statement the Court made with regard to the decision's impact on pending cases is to state that "we must apply today's holdings – both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act – to all cases on direct review." Booker, slip op. at 25. "The Supreme Court does not 'make' a rule retroactive when it merely establishes principles of retroactivity and leaves the application of those principles to lower courts." Tyler, 533 U.S. at 663.

Any challenge premised on Blakely, and now Booker, fails on its merits because, as with Apprendi and other cases applying its principles, Booker does not apply retroactively to matters pending on collateral review. Although the Fourth Circuit has not directly addressed the question of whether Booker applies retroactively on collateral review to initial § 2255 petitions, every circuit court that has addressed the question concluded that Booker does not apply retroactively. See Humphress v. United States, 2005 U.S. App. LEXIS 3274, 2005 FED App. 94P, 2005 WL 433191, at *7 (6th Cir. 2005); Varela v. United States, 2005 U.S. App. LEXIS 2768, 2005 WL 367095, at *3-4 (11th Cir. Feb. 17, 2005); McReynolds v. United States, 397 F.3d 479, 2005 U.S. App. LEXIS

1638, 2005 WL 237642, at *2 (7th Cir. 2005); see also Coleman v. United States, 329 F.3d 77 (2d Cir. 2003) (holding that Apprendi does not apply retroactively).

Moreover, neither Apprendi nor Blakely have been held to apply retroactively to cases pending on collateral review. See United States v. Sanders, 247 F.3d 139, 146 (4th Cir. 2001) ("[N]either the Supreme Court nor any of our sister circuits have held that Apprendi is retroactively applicable on collateral attack."); United States v. Marshall, 2004 U.S. App. LEXIS 26699 (4th Cir. 2004) (stating that the Supreme Court has not made its ruling in Blakely retroactive to cases on collateral review); In re Dean, No. 04-13244, 2004 U.S. App. LEXIS 14191, *7 (11th Cir., July 9, 2004) ("[T]he Supreme Court has strongly implied that Blakely is not to be applied retroactively."). Based on these holdings, it is not unreasonable for this Court to conclude that Booker does not apply retroactively to cases pending on collateral review and it does not offer petitioner any relief from his sentence.

### b. Petitioner's Motion to Alter or Amend Judgment Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure

On January 6, 2005, this Court denied petitioner's Motion to Amend his 2255 Application pursuant to Rule 15(c) of the Federal Rules of Civil Procedure. See Memorandum Opinion (Docket No. 380). Petitioner filed this motion before the Government responded to his 2255 application. Petitioner sought leave to amend on the grounds that "enhancements" in his Pre-Sentence Report were unconstitutional in light of the Supreme Court's decision in Blakely v. Washington, 124 S. Ct. 2531 (2004). Petitioner referred to the "enhancements" based on his criminal history score pursuant to U.S.S.G. § 4A1.1.

The Court initially found that the Pre-Sentence Report properly calculated petitioner's criminal history category based on his prior convictions. The Court then held, without concluding that Blakely declared the Federal Sentencing Guidelines unconstitutional, that "enhancements" based on criminal history were not contrary to the holding in Apprendi v. New Jersey, 530 U.S. 466 (2000), as applied in Blakely. Prior convictions contain their own internal, procedural safeguards because the facts supporting those convictions have either been admitted by the petitioner as part of a guilty plea or found beyond a reasonable doubt by a jury. The Court concluded that use of petitioner's prior convictions to calculate his sentencing range did not violate the holdings of Blakely or Apprendi. Accordingly, the Court denied petitioner's motion to amend where that amendment would prove futile. See United States v. Hodge, 26 Fed. Appx. 310 (4th Cir. 2002).

Petitioner now moves this Court to alter or amend this Judgment under Rule 59(e) of the Federal Rules of Civil Procedure.[6] The Court may grant such a motion "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Hutchinson v. Staton, 994 F.2d 1076, 1081 (4th Cir. 1993). Petitioner bases his motion to amend on the Supreme Court's recent holding in United States v. Booker, 543 U.S. __ (2005). However, petitioner continues to assert that the Court improperly "enhanced" his sentence based on his prior criminal history.

Ignoring for a moment that Booker does not apply retroactively to cases pending on collateral review, see supra, petitioner's argument is still without merit because the holding in Apprendi

---

[6]Petitioner dated his motion January 16, 2005, the deadline date for a motion to alter or amend judgment under Rule 59. The Court did not receive petitioner's motion until January 24, 2005. The Court will assume that petitioner properly dated this motion despite the delay. However, the Court notes for the record that petitioner is currently housed in Jonesville, Virginia and that the envelope appears to be date-stamped January 22, 2005.

specifically authorizes the use of a defendant's criminal history in calculating a sentence under the guidelines.  See Apprendi, 530 U.S. at 490 ("*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (emphasis added).  Petitioner failed to demonstrate how the use of his criminal history at sentencing resulted in manifest injustice; therefore, his motion to amend the Court's previous judgment will be denied.

III.  Conclusion

Therefore, petitioner's Motion is without merit and his application seeking relief from his sentence must be DENIED.[7]  Petitioner failed to demonstrate, by a preponderance of the evidence, that the Court imposed his sentence in violation of the United States Constitution.

An appropriate Order shall issue.

   /s/ James R. Spencer  
JAMES R. SPENCER  
UNITED STATES DISTRICT JUDGE

APR 18, 2005  
DATE

---

[7] The Court notes that petitioner's offense level of 45 takes him outside of the maximum range set by the Sentencing Table.  Even if petitioner's criminal history showed no prior convictions, he would have received life in prison based solely on his offense level.

16